Damaris **BENT**, Plaintiff,

v.

**LEEMON OIL CO., INC. d/b/a RKA Petroleum Companies,**
**Defendant.**

No. 93–74349.

United States District Court,
E.D. Michigan, S.D.

April 14, 1994.

Jamal J. Hamood, Stone & Biber, Troy, MI, for plaintiff.

Richard P. O'Brien and Marc A. Fishman, Marc A. Fishman Assoc., Southfield, MI, for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

In November 1993, this court granted plaintiff's motion for preliminary injunction under the equitable relief provision of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2805. On January 5, 1994, plaintiff filed the instant motion for summary judgment. Defendant Leemon Oil Co., Inc. ("Leemon Oil") responded January 21, 1994. Plaintiff filed a reply (entitled "Supplemental Response" and attaching exhibits) on February 18, 1994. Oral argument was heard April 6, 1994.

### I. Facts

Defendant Leemon Oil is a Michigan corporation licensed to act as a distributor of petroleum products which bear the Union 76 trademark. In June 1992, plaintiff was assigned the lease on a Union 76 minimart/gas station with a monthly rent of $3,750. The lease has a five-year term which began October 31, 1991 and expires November 1, 1996. Upon expiration, the lease by its terms is automatically renewed for a new five-year term unless thirty days written notice is given.

Both Leemon Oil and the real property subject to the lease are solely owned by Roger K. Albertie. The lease nevertheless names as the lessor, "Price/Mart Corp." In the State of Michigan, no corporate entity has obtained a certificate from the Corporations and Securities Bureau authorizing it to do business under the name Price/Mart Corp.

Subsection (a)(xv) of paragraph 14 of the lease provides that the lease shall automatically terminate if, among other enumerated events, "there occurs any [ ] circumstances under which termination of a franchise is permitted under the provisions of the Federal Petroleum Marketing Practices Act, 15 U.S.C. § 2801." By this term, as well as others, the lease clearly contemplates that it creates a franchise relationship between the parties that is subject to the PMPA.

In August 1993, plaintiff was served with a "Demand for Possession" of the premises which alleged that plaintiff owed lessor $146,-250.00 in rent.[1] Plaintiff also received a thirty-day notice to quit which alleged that there was no written lease and stated as the reason for the eviction "Landlord no longer wants you as tenant." Plaintiff filed the instant action under 15 U.S.C. § 2801, *et seq.*, alleging that defendant had breached the notification and cause for termination requirements of the PMPA.

Throughout the pendency of this action, right up until the hearing on this motion for summary judgment, defendant's defense to

---

1. This amount represents the accelerated rent for the remainder of the five-year lease (that is, 39 months at $3,750 per month).

this action has been its claim that the lease was not subject to the PMPA because the lease was with a non-franchising entity, Price/Mart Corp., that was now doing business as Price Gasoline, Inc. Defendant's counsel initially tried to claim, without any supporting documentation, that Price Gasoline leased the premises from Albertie, the owner, and then sublet the premises to plaintiff. In addition to there being no documentation of this transaction, the lease at paragraph 4 affirmatively states that there is no underlying estate or encumbrance. In short, defendant offers no evidence or legal argument that would support a finding that the lease of the land was not an integral part of the franchise agreement between Leemon Oil and plaintiff.

Plaintiff seeks summary judgment on the ground that defendant has taken the position in state court that it and not Price/Mart Corp. or Price Gasoline, Inc. is the true lessor of the property. As evidence of this, plaintiff presents the pleading of defendant Leemon Oil which opposes plaintiff's motion to set aside a default judgment that defendant obtained from the state court in a state court action brought by Leemon Oil for the collection of unpaid fuel bills and unpaid rent. In that state court action, in which Leemon Oil, defendant herein, was the plaintiff, and Damaris Bent, plaintiff herein, was the defendant, Leemon Oil states that Damaris Bent

> knows full well that the initial landlord to the underlying lease is not [sic] longer in existence, and that [Leemon Oil] is the proper party in interest ... [plaintiff] has, in fact, tendered her last two (2) rent payments to [Leemon Oil]. *[Leemon Oil] merely chose to use the Price Mart name in the summary proceedings action for the sake of expediency.* As noted by [Leemon Oil]'s letterhead, attached as Exhibit E to this Brief and as Exhibit 3 to [plaintiff]'s brief, both "Leemon Oil" and "Price Mart Stations" are affiliates of RKA Petroleum Companies. Accordingly, *[plaintiff], who has long acknowledged [Leemon Oil] as her landlord, should be estopped from disclaiming that relationship* in a blatant attempt to establish a defense when none exists in this case.

Exhibit 7 to Plaintiff's Motion (emphasis added). Despite this clear evidence that Leemon Oil is the landlord of the premises at issue, and in fact views itself as such, defendant Leemon Oil has had the audacity to continue to argue before this court, right up until the hearing on this motion, that Leemon Oil is not the manager of the property.

Defendant admitted in its written response and at oral argument that there is not and has never been any such corporation licensed in the state of Michigan to do business as Price/Mart Corp. In its written response, defendant argues, "[h]owever, as between Mr. Albertie, the owner of the real estate, and any of the nine (9) corporations, which for economy of dollars share the same letterhead, Price Gasoline, Inc., is the managing landlord of the subject premises. Leemon Oil Co., Inc., is not engaged in any business other than the sale of petroleum." Defendant's Brief at 3–4. Finally, at oral argument, knowing full well that there was not a stitch of evidence to support its position that Leemon Oil was not the lessor, defendant's counsel conceded that Leemon Oil is the lessor of the property and that, to the best of counsel's knowledge, Price/Mart Corp. never existed.

## II. Analysis

The PMPA defines a franchise as, *inter alia,* any contract between a distributor and a retailer, under which a distributor authorizes or permits a retailer to use, in connection with the sale of motor fuel, a trademark which is owned by a refiner which supplies motor fuel to the distributor which authorizes or permits such use. 15 U.S.C. § 2801(1)(A). Defendant Leemon Oil has admitted since the outset of these proceedings that it has a motor fuel supply agreement with plaintiff which creates a franchise relationship; the only question has been whether defendant could be held responsible for the eviction when a non-existent company named Price/Mart Corp. was named on the lease as the lessor. Defendant now admits that it is also the lessor and that the lease is within the franchise relationship.

■ Congress enacted the PMPA in an effort to protect "franchises from arbitrary

or discriminatory termination or non-renewal of their franchises." *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1216 (7th Cir.1982), *quoting* S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 874 ("Senate Report").

> The franchise relationship in the p⹀troleum industry is unique in that the franchisor commonly not only grants a trademark license and supplies the products *but also leases the service station premises* to the franchisee. As Congress noted, "[t]his relationship is often complex and characterized by at time competing interests."

*Id.* (emphasis added). In enacting the PMPA, Congress intended to allay, *inter alia,* concerns that there generally is a gross disparity in bargaining power between franchisor and franchisee, and that termination or nonrenewal disrupts the reasonable expectations of the parties that the franchise relationship will be a continuing one. *Id.* In every case of termination or non-renewal under the PMPA, there must be strict compliance with the notice provisions of the PMPA. *Hanes v. Mid–America Petroleum, Inc.,* 577 F.Supp. 637, 646 (W.D.Mo.1983), *citing Escobar v. Mobil Oil Corp.,* 678 F.2d 398, 400 (2d Cir.1982); *Thompson v. Kerr–McGee Refining Corp.,* 660 F.2d 1380, 1390 (10th Cir. 1981); *Mobil Oil Corp. v. Clark,* 652 F.2d 2, 3 (8th Cir.1981).

## A. Preemption of State Tenancy Laws by the PMPA

Defendant weakly argues that where a franchisor claims a franchisee is not paying rent on the lease in a timely manner that the franchisor is free to employ state summary proceedings to evict the franchisee. As support for this proposition, defendant offers two Georgia state law cases, *Bates v. Chevron U.S.A., Inc.,* 151 Ga.App. 544, 260 S.E.2d 367 (1979) and *Walters v. Chevron U.S.A., Inc.,* 154 Ga.App. 636, 269 S.E.2d 495 (1979) which defendant claims stand for the proposition that the PMPA does not preempt state tenancy laws and eviction proceedings.

█ The Georgia cases cited by defendant merely stand for the proposition that the proper place for a franchisee to raise a claim of wrongful eviction is in federal court, as plaintiff in this case has done, and not in state court as a defense to an eviction proceeding. Furthermore, the facts of those cases differ from the facts in this case in two very significant respects. First, the franchisees in both of the Georgia cases cited by defendant were holdover tenants who had no current lease with the petroleum franchisor. Second, both of those franchisees had sought relief in a federal court and had lost on their federal law claims.

Clearly, the legislative history quoted in *Brach,* cited *supra,* demonstrates that Congress contemplated that the PMPA would cover leasehold disputes as well as disputes over other aspects of the franchise relationship. As the Georgia court noted, the PMPA "drastically affected the legal relationships of petroleum companies and their dealers." *Bates,.* 260 S.E.2d at 368. In at least one federal case, the court specifically found that the PMPA preempts inconsistent state tenancy law requirements for terminating lease agreements. *Brach v. Amoco Oil Co.,* 570 F.Supp. 1437, 1442 (N.D.Ill.1983), *on remand.* Furthermore, federal courts have repeatedly addressed landlord-tenant disputes between franchisors and franchisees without there being any question raised as to the application of state tenancy laws. *Marathon Petroleum Co. v. Pendleton,* 889 F.2d 1509 (6th Cir.1989); *Brach,* 677 F.2d 1213; *Thompson v. Amoco Oil Co.,* 705 F.Supp. 1349 (C.D.Ill.1989); *Cason v. Texaco, Inc.,* 621 F.Supp. 1518 (M.D.La.1985).

Section 2806 of the PMPA "provides for preemption of *all* state law inconsistent with the PMPA." *In re Herbert,* 806 F.2d 889, 892 (9th Cir.1986) (emphasis in original). Numerous other courts have consistently interpreted section 2806 as preempting any state law claims related to termination or non-renewal of a petroleum franchise under the Act. *Humboldt Oil Co., Inc. v. Exxon Co., U.S.A.,* 823 F.2d 373, 374–75 (9th Cir. 1987), *cert. denied sub nom. Mastello v. Exxon Co., U.S.A.,* 485 U.S. 1021, 108 S.Ct. 1575, 99 L.Ed.2d 890 (1988); *Atlantic Richfield Co. v. Herbert,* 806 F.2d 889, 892 (9th Cir.1986); *Eubanks Bros. v. Texaco Refining and Marketing,* 764 F.Supp. 1142, 1144 (S.D.Tex. 1990); *Esquivel v. Exxon Co., U.S.A.,* 700

F.Supp. 890, 896–97 (W.D.Tex.1988). "[T]he PMPA preempts a state law action when the action arises out of the franchise termination or is an incident of the termination." *Continental Enterprises, Inc. v. American Oil Co.,* 808 F.2d 24, 27 (8th Cir.1986).

Michigan tenancy law and its provision of summary proceedings for eviction of tenants are inconsistent with the requirements specified by the PMPA. The court therefore holds that the state tenancy laws and eviction proceedings of Michigan are preempted by the PMPA.

## B. Notification Requirements of the PMPA

■ Section 2804(c) requires that the franchisee be served personally or by certified mail with a written notice of termination that summarizes the parties' rights and responsibilities under the PMPA, and that states the reasons for termination and the date on which such termination or non-renewal takes effect. Except as provided in 15 U.S.C. § 2804(b),[2] such notice must be given not less than 90 days prior to the date on which such termination takes effect. 15 U.S.C. § 2804(a). The reasons for which a franchise may legally be terminated are enumerated in section 2802.

In the instant case, it is undisputed that no 90–day advance written notice explaining the parties' rights, stating the reasons and giving the date of the termination was served upon plaintiff. In August 1993, plaintiff was served merely with a notice to quit the premises within 30 days. The reason for the eviction was stated as "Landlord no longer wants you as tenant." The court can imagine no termination more arbitrary.[3]

**2.** This section provides that the 90–day requirement does not apply "[i]n circumstances in which it would not be reasonable for the franchisor to furnish [such] notification." If such circumstances exist, however, the franchisor "shall furnish notification to the franchisee ... on the earliest date on which furnishing of such notification is reasonably practicable." 15 U.S.C. § 2804(b)(1)(A). Defendant makes no argument that this exception applies here.

**3.** Although termination of the franchise has not yet been effected, it is apparently imminent from the notice of eviction.

## C. Remedial Provisions of the PMPA

■ The PMPA requires that, if a franchisor fails to comply with the notification requirements of sections 2802(b)(1)(A) and 2804, and the franchisee brings an action based on such failure, the court must grant such equitable relief as is necessary to remedy the effects of such failure.[4] *Hanes,* 577 F.Supp. at 647–48, *citing Clark v. Mobil Oil Corp.,* 496 F.Supp. 132 (E.D.Mo.1980), *aff'd,* 652 F.2d 2 (8th Cir.1981). In the instant case, the court finds that defendant clearly has made no effort to comply with the notification requirements of the PMPA. Furthermore, defendant has prolonged this litigation by maintaining the utterly meritless position that its leasehold agreement with plaintiff is not subject to the PMPA. The effects of defendant's actions are twofold: first, plaintiff has incurred substantial legal costs in procuring defendant's compliance with the PMPA and in defending against the state court eviction proceedings; and second, plaintiff has suffered the apprehension of being evicted from her business.

■ The proper remedy is for the court, under the equitable powers assigned to it by section 2805(b)(1), to restore the parties to the position they were in before the wrongful eviction proceedings began. *Id.* at 648; 15 U.S.C. § 2805(b)(1). In so doing, the court therefore shall order the defendant to pay plaintiff's legal costs and shall order the defendant to cease its unlawful activities with respect to the eviction of plaintiff from the premises. Once the status quo has been regained, however, the franchise again will be subject to defendant's rights to properly terminate the franchise in accordance with

**4.** Defendant makes no argument that it has complied with any portion of the PMPA. Instead defendant has persisted in arguing that because Albertie owns more than one corporation that he may designate any one of those corporations as the lessor and evict plaintiff without violating the franchise agreement or the PMPA. Such a position is a devious and reprehensible tactic which has done nothing but frustrate the court's efforts at addressing the true questions at issue.

the grounds for termination set forth in 15 U.S.C. § 2802 and the method of termination set forth in 15 U.S.C. § 2804.[5] *See id.* (where failure to comply with notification requirements was found, the franchise, once reinstated, was again subject to defendant's right to terminate under 15 U.S.C. § 2802).

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment is **GRANTED.**

It is further **ORDERED** that plaintiff's request for declaratory judgment on the issue of whether the relationship between plaintiff and defendant constitutes a franchise relationship covered by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.,* is **GRANTED** and the court hereby **DECLARES** that the lease and motor fuel supply agreement between Damaris Bent and the non-existent Price/Mart Corp. does constitute a franchise relationship between Damaris Bent and Leemon Oil Co., Inc., the latter being the true lessor and franchisor in interest.

It is further **ORDERED** that Leemon Oil Co., Inc. and any successor thereto is hereby **PERMANENTLY ENJOINED** from terminating the franchise relationship in any manner that is not in accord with the grounds and notification requirements of 15 U.S.C. §§ 2802 and 2804, respectively; as to the state circuit court case presently pending between Leemon Oil Co., Inc. and Damaris Bent, that action may go forward without violating this injunction only to the extent that the resolution of the state case does not effect a termination of the franchise.

It is further **ORDERED** that, under the equitable powers invested in this court by 15 U.S.C. § 2805, defendant is hereby to restore plaintiff to the position she was in prior to the commencement of defendant's unlawful attempts to evict plaintiff in order to terminate the franchise by paying plaintiff her reasonable costs and attorney fees.

It is further **ORDERED** that plaintiff's counsel is to file an application for attorney fees and costs together with a supporting affidavit within the 30-day time limit set forth in Local Rule 54.2 (E.D.Mich. Jan. 1, 1992).

**SO ORDERED.**

### JUDGMENT

This action came on for review before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered,

It is hereby **ORDERED** that plaintiff's request for declaratory judgment on the issue of whether the relationship between plaintiff and defendant constitutes a franchise relationship covered by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.,* is **GRANTED** and the court hereby **DECLARES** that the lease and motor fuel supply agreement between Damaris Bent and the non-existent Price/Mart Corp. does constitute a franchise relationship between Damaris Bent and Leemon Oil Co., Inc., the latter being the true lessor and franchisor in interest.

It is therefore further **ORDERED** that Leemon Oil Co., Inc. and any successor thereto is hereby **PERMANENTLY EN-JOINED** from terminating the franchise relationship in any manner that is not in accord with the grounds and notification requirements of 15 U.S.C. §§ 2802 and 2804, respec-

---

5. Defendant makes various claims that plaintiff has defaulted on her obligations as franchisee by failing to pay rent in a timely manner, and by maintaining from time to time an arrearage on her fuel supply contract. Plaintiff, on the other hand, claims that defendant is merely creating a pretense to evict plaintiff because defendant wants to sell the property to a third party. In support of this claim, plaintiff presents a letter dated August 19, 1993 from William Gravius on letterhead of RKA Companies (listing Leemon Oil and "Price Mart Stations" as two of those nine "companies"); this letter indicates that Gravius is the "loyal representative of Leemon Oil Company," that Leemon Oil is attempting to "make the most lucrative deal" with respect to the sale of the property, that "Leemon Oil owns" the premises at issue in this case, and that plaintiff is the "current tenant" of Leemon Oil. Because defendant has failed to comply with the method of termination prescribed by the statute, the issue of whether defendant has proper grounds for termination is not properly before this court. *Hanes,* 577 F.Supp. at 647.

tively; as to the state circuit court case presently pending between Leemon Oil Co., Inc. and Damaris Bent, that action may go forward without violating this injunction only to the extent that the resolution of the state case does not effect a termination of the franchise.

It is further **ORDERED** that, under the equitable powers invested in this court by 15 U.S.C. § 2805, defendant is hereby directed to restore plaintiff to the position she was in prior to the commencement of defendant's unlawful attempts to evict plaintiff in order to terminate the franchise, by paying plaintiff her reasonable costs and attorney fees.

It is further **ORDERED** that plaintiff's counsel is to file an application for attorney fees and costs together with a supporting affidavit within the 30–day time limit set forth in Local Rule 54.2 (E.D.Mich. Jan. 1, 1992).

It is further **ORDERED** that ·the clerk serve a copy of this judgment by United States mail on the counsel for plaintiff and on counsel for defendant.