ZAD, LLC, Appellant,

v.

**BULK PETROLEUM CORP., Appellee.**

No. 2010–CA–000023–DG.

Court of Appeals of Kentucky.

May 25, 2012.

Kent Wicker, Steven S. Reed, Louisville, KY, for appellant.

Griffin Terry Sumner, Steven M. Crawford, Tanya Y. Bowman, Louisville, KY, for appellee.

Before ACREE and STUMBO, Judges; LAMBERT,[1] Senior Judge.

## OPINION

ACREE, Judge:

The issue before us is whether the district court properly entered a judgment of forcible detainer against Zad, LLC, thereby ordering Zad to vacate a gas station and convenience store which it had leased from Bulk Petroleum Corp. More specifically, Zad claims Title I of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2806, preempts state forcible detainer statutes, at least as applied to petroleum franchise agreements, and it was therefore improper for the district court to evict Zad under state law.[2] We agree with Zad and reverse the district court's order.

### Background

In 2004, Bulk Petroleum, a distributor of petroleum products, purchased a gas station and convenience store located in Louisville, Kentucky. At that time, Zad was operating the facility under a "Dealer Lease and Supplier Agreement" into which

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute(s)(KRS) 21.580.

2. It is unclear whether Kentucky's forcible detainer statute, KRS 383.200, or Wisconsin's comparable statute, Wisconsin Statute(s) Annotated (WSA) § 799.40, formed the legal basis for the district court's judgment. The lease agreement at issue contained a choice of law provision designating Wisconsin's law as controlling, while Bulk Petroleum cited KRS 383.200 as the basis of its petition. The circuit court found the district court had properly applied Wisconsin law despite the absence of citation to legal authority in the district court's order.

it had entered with Bulk Petroleum's predecessor. Bulk Petroleum assumed the contractual responsibilities of its predecessor upon acquiring the real property, and the parties initially operated under that agreement. The stated expiration date of the Dealer Lease and Supply Agreement was December 31, 2006.

When the scheduled expiration date arrived, the parties' relationship did not end. Bulk Petroleum continued supplying Zad with BP brand gasoline, allegedly on a month-to-month basis, and although Bulk Petroleum lost the right to distribute gasoline under the BP trademark in December 2007, it continued to sell gasoline to Zad.[3] Zad continued occupying the premises. The subject of the present controversy is a written agreement the parties entered into on January 31, 2008, which is simply entitled "Lease."[4] That agreement was to expire January 31, 2009.

At some point after they entered into the 2008 Lease, the parties' relationship deteriorated. Zad has alleged Bulk Petroleum attempted to "force" an end to the relationship by falsely claiming Zad had failed to perform its obligations under the lease agreement and the gasoline supply arrangement. Bulk Petroleum has alleged Zad failed to make timely rental payments for several months, and also failed to pay for petroleum products supplied by Bulk.

Zad filed suit in federal district court in May 2008, claiming Bulk Petroleum's actions constituted violations of the PMPA's prohibition against terminating a franchise agreement without cause and asserted claims of breach of contract, unfair competition, and tortious interference with business relations. Zad also sought a declaration of its rights under the lease and an award of damages. Bulk Petroleum filed an answer in which it denied wrongdoing and a counterclaim in which it alleged Zad had breached the parties' agreement.

Following early pretrial proceedings, Bulk Petroleum filed for bankruptcy which stayed proceedings in the federal district court. Bulk then filed a petition for forcible detainer in Jefferson District Court on July 23, 2009.[5] It alleged Zad had breached the lease agreement by failing to make rental payments for November and December 2008 and January 2009.

Following trial, the district court entered judgment finding Zad "guilty" of forcible detainer and ordering it to return possession of the property to Bulk Petroleum. That order, in its entirety, provided as follows:

> This cause coming on to be heard, and the Court being sufficiently advised, IT IS HEREBY ORDERED AND ADJUDGED that the Defendant is guilty of forcible detainer as charged and that Plaintiff have restitution of the premises, 11401 Westport Road, Louisville, Kentucky 40241 and recover of the Defendant the costs expended herein.

Zad appealed the ruling to the Jefferson Circuit Court, which affirmed, finding Wisconsin law controlled and was not preempted by the PMPA. This Court then granted Zad's motion for discretionary review.

3. The parties disagree as to whether the petroleum products sold to Zad during this time were trademarked.

4. Zad asserts in its brief that following the 2006 expiration of the parties' first agreement, it continued to occupy the premises under a series of one-year leases. Only one document entitled "Lease" is in the record.

5. Bulk had previously filed a petition for forcible detainer which was dismissed without prejudice. The earlier petition is in no way at issue in the instant appeal.

## Discussion

■ Congress enacted the PMPA, which went into effect in 1978, in response to concerns that due to unequal bargaining power, franchisors of petroleum products were often terminating franchise relationships for arbitrary or discriminatory reasons. *Simmons v. Mobil Oil Corporation,* 29 F.3d 505, 509 (9th Cir.1994) (citing S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 874 (Senate Report)); *Mac's Shell Service, Inc. v. Shell Oil Products Co., LLC,* —— U.S. ——, 130 S.Ct. 1251, 1255, 176 L.Ed.2d 36 (2010) ("[T]he PMPA was a response to widespread concern over increasing numbers of allegedly unfair franchise terminations and nonrenewals in the petroleum industry."). Accordingly, Title I of the PMPA "limits the circumstances in which petroleum franchisors may 'terminate' a franchise or 'fail to renew' a franchise relationship." *Id.* at 1254. One specific goal of the Act is "to prevent . . . the appropriation of hard-earned goodwill which occurs when a franchisor arbitrarily takes over a business that the franchisee has turned into a successful going concern." *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1220 (7th Cir.1982) (citing 123 Cong.Rec. 10385 (remarks of Rep. Conte); *id.* at 10386 (remarks of Rep. Mikva)). To enforce the restrictions on a franchisor's ability to end a franchise agreement, the PMPA provides franchisees a cause of action. 15 U.S.C. § 2805.

The Act also imposes a series of hurdles which franchisors must clear before the franchise relationship may be terminated. For example, if a franchisee violates a provision of the franchise agreement, the franchisor may terminate the relationship only if the provision violated "is both rea-sonable and of material significance to the franchise relationship." 15 U.S.C. § 2802(b)(2)(A). The PMPA also contains provisions governing the franchisor's waiver of a breach committed by the franchisee, 15 U.S.C. § 2802(b)(2)(A), as well as strict rules governing the nature of the notification the franchisor must provide the franchisee when that franchisor intends to terminate the relationship, 15 U.S.C. § 2804.

The parties' respective positions in this appeal highlight the debate that has been ongoing in courtrooms across the country since the PMPA was enacted—whether and to what extent the PMPA preempts state legislation which does not expressly attempt to regulate petroleum franchises. State laws governing the landlord-tenant relationship have been addressed specifically.

■ Zad urges this Court to adopt the reasoning of *Bent v. Leemon Oil Co., Inc.,* 849 F.Supp. 1180 (E.D.Mich.1994), which found Michigan's eviction laws are preempted to the extent they affect franchise relationships.[6] Bulk Oil responds that the PMPA does not preempt state eviction law and urges the application of two cases from the Court of Appeals of Georgia, *Walters v. Chevron U.S.A., Inc.* 154 Ga.App. 636, 269 S.E.2d 495 (1980), and *Bates v. Chevron U.S.A., Inc.,* 151 Ga.App. 544, 260 S.E.2d 367 (1979), and one case from the Eighth Circuit Court of Appeals, *Thelen Oil Company, Inc. v. Fina Oil & Chemical Company,* 962 F.2d 821 (8th Cir.1992).

We are not persuaded by the authority Bulk Petroleum cites. In *Thelen,* the federal circuit court held that a *lease provision* governing attorney's fees was not

---

6. Zad further argues that federal law does not permit the eviction and/or termination of the lease. That is a matter for the PMPA action in the federal district court and was not before the Jefferson District Court. We need not address that argument.

preempted, at least with respect to claims not brought under the PMPA. *Thelen,* 962 F.2d at 824. The case does not address preemption of state statutes. The Georgia Court of Appeals cases cited are at least relevant: *Walters,* 269 S.E.2d at 496 (holding the PMPA "does not 'preempt' [Georgia's eviction statutes] so as to make the grounds for a civil action against the franchisor under the PMPA into a defense for a tenant holding over against whom a dispossessory proceeding is instituted"); and *Bates,* 260 S.E.2d at 369 (denying the franchisee's "attempt to obtain in State court a remedy under Federal legislation which a Federal court declined to extend to him"). Of course, authority from other states is not controlling in this jurisdiction. *See Epsilon Trading Co., Inc. v. Revenue Cabinet,* 775 S.W.2d 937, 941–42 (Ky.App.1989) (citing *Collins v. Kentucky Tax Commission,* 261 S.W.2d 303 (Ky.1953)).

Zad's cited authority is not much better; *Bent,* too, has its drawbacks. In *Bent,* the U.S. District Court expanded the previous holding of *Brach, supra,* and declared, "Michigan tenancy law and its provision of summary proceedings for eviction of tenants are inconsistent with the requirements specified by the PMPA. The court therefore holds that the state tenancy laws and eviction proceedings of Michigan are preempted by the PMPA." *Bent,* 849 F.Supp. at 1184.

While this might be perceived as a clear and instructive statement of federal law by a federal court, our confidence in the holding is undermined by several factors. First, the court in *Bent* did not identify *which* Michigan laws, specifically, were preempted. We are unable, therefore, to compare the preempted Michigan laws to the state laws applicable to this case, nor are we able to divine the standard which renders such state laws preempted. Second, there were apparently no eviction proceedings in state court which were actually at issue in *Bent;* rather, the franchisor merely raised another state's holding that its eviction laws were not preempted by the PMPA as a defense to the franchisee's complaint filed pursuant to 15 U.S.C. § 2801. It is unclear why *Bent's* sweeping preemption statement was made a formal holding, when it would ordinarily be relegated to *dicta.* Finally, *Brach* itself seems to suggest that state eviction proceedings can be employed to evict a franchisee. *Brach,* 677 F.2d at 1216 (the court notes without comment that "Amoco filed a forcible detainer action [against Brach] in the Circuit Court of DuPage County, Illinois.").

We are unable to do as the parties urge and simply adopt the holding or reasoning of their cited authority, tempting as that may be; we must engage in a preemption analysis of our own.

 The Supremacy Clause of the United States Constitution, Article VI, provides the basis of the doctrine of federal preemption. *Niehoff v. Surgidev Corp.* 950 S.W.2d 816, 820 (Ky.1997). "The historic police powers of the state are not preempted in the absence of the clear and manifest purpose of Congress to do so." *Id.* (citations and quotation marks omitted). "The congressional purpose to preempt a state remedy may be determined in either of two ways. The first is whether the preemption is found in the express language of the statute. The second is to find preemption implied from the structure and purpose of the statute." *Id.* (citations omitted).

As a general statement, preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law[;] ... when there is outright or actual conflict between federal and state law[;] ... where compli-

ance with both federal and state law is in effect physically impossible[;] . . . where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the states to supplement federal law[;] . . . or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Commonwealth, ex rel. Cowan v. Telcom Directories, Inc.*, 806 S.W.2d 638, 640 (Ky. 1991) (citations omitted).

■ Despite the disagreement among courts about the PMPA and the extent of its preemptive effect, some things are clear. As a general rule, any state law respecting franchise relationships, and which is inconsistent with the PMPA, is preempted. *Mobil Oil Corporation v. Virginia Gasoline Marketers and Automotive Repair Association, Inc.*, 34 F.3d 220, 224 (4th Cir.1994) (holding state law cannot restrict or expand the available grounds for termination or nonrenewal beyond those identified in the PMPA).

It is also clear that lease agreements between franchisors and franchisees are frequently part of a broader franchise agreement, and therefore lease agreements are often subject to the restrictions of the PMPA, as well. *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 864 (7th Cir.2002) (stating there are three statutory components of a franchise agreement: "lease of retail premises, motor fuel supply contract, [and] the contract to use the franchisor's trademark."); *see also Mac's*

*Shell Service, Inc.*, 130 S.Ct. at 1255 ("In the typical franchise arrangement, the franchisor leases the service-station premises to the franchisee, grants the franchisee the right to use the franchisor's trademark, and agrees to sell motor fuel to the franchisee for resale.").[7] Bulk Petroleum's argument that the lease agreement now at issue was wholly separate and independent of the parties' fuel trademark and distribution agreements, and that the PMPA is therefore not implicated in this dispute, is suspect.

■ A state statute governing a franchise relationship is not preempted unless it is inconsistent with the PMPA. *Mobil Oil Corporation v. Virginia Gasoline Marketers*, 34 F.3d 220 at 224. Here, we cannot even ascertain what state law the district court applied. That deficiency of the order on appeal is inconsequential, however, because we find that application of either state's law obstructs accomplishment of the objectives of the PMPA. Kentucky law provides for eviction of a tenant upon a showing that a tenant has refused "to give possession to his landlord after the expiration of his term[.]" KRS 383.200(3)(a). Wisconsin law permits eviction of "any person who is not entitled to either the possession or occupancy of such real property." WSA 799.40(1).

■ The forcible detainer statutes of both states are purposefully abbreviated. In Wisconsin, "[a]n action for eviction . . . is intended to be a summary proceeding[,]" *Scalzo v. Anderson*, 87 Wis.2d 834, 275

---

7. In *Abrams Shell v. Shell Oil Company*, the Fifth Circuit Court of Appeals recognized, "There are two agreements required to establish a petroleum franchise: (1) a Retail Facility Lease covering the lease of the service station premises; and (2) a Retail Sales Agreement providing for the sale of gasoline[,]" which "are normally supplemented by a third one: a trademark agreement providing for the use of a brand name (e.g., Shell) by the franchisee." 343 F.3d 482, 484 (5th Cir.2003); *see also Smith v. Atlantic Richfield Co.*, 533 F.Supp. 264, 268 (1982) ("Secondary arrangements, such as leases of real property or motor fuel supply agreements[,] are incorporated in the definition of a franchise.") (citing Sen.Rep.No. 95–731, 75th Cong., 2d Sess., reprinted in (1978) U.S.Code, Cong. & Ad. News 873, 888).

N.W.2d 894, 899 (1979), just as it is in Kentucky. *Baker v. Ryan*, 967 S.W.2d 591, 593 (Ky.App.1997) ("Forcible detainer actions are designed to be summary proceedings."). Also, the process in both states is expedited. *Scalzo*, 275 N.W.2d at 899 ("[T]he legislature intended to provide a 'speeded up' forum[.]"); *Baker*, 967 S.W.2d at 593 (In forcible detainer actions, "[n]otice periods are short[.]"). Under the Wisconsin statute "there is ... seldom an issue for trial." Finally, the focus is so narrow as to barely leave any issue to be resolved. *Scalzo*, 275 N.W.2d at 899 ("[T]here [is] a very limited number of issues permissible in an eviction action [and] seldom an issue for trial."); *Baker*, 967 S.W.2d at 593 ("In general, the only issues are possession by the plaintiff and detainer by the defendant ... pleadings are restricted, triable issues are limited, discovery is generally unavailable, and the judgment is promptly operative." (citations and quotation marks omitted)).

These disputes frequently involve merely a showing that the tenant has stopped paying rent or some other relatively basic provision of the lease agreement. Indeed, that is all the evidence Bulk Petroleum offered the district court—that Zad had not paid rent for November and December 2008 and January 2009. The PMPA, on the other hand, requires a series of thoughtful, difficult factual analyses before a franchise relationship can be deemed properly terminated, which neither state's forcible detainer procedures are equipped to handle. We conclude that the issues are certainly not of the type Congress intended to be addressed by a court of limited jurisdiction.

Under these circumstances, the purpose of the PMPA would be eviscerated if landlord/franchisors were permitted to use state summary proceedings to evict tenant/franchisees without evaluation of whether the PMPA permits termination of the franchise agreement. The state laws cited herein permit eviction in broader circumstances than those in which the PMPA permits termination of a franchise agreement. Therefore, when a franchisee is also a tenant of the franchisor, the eviction laws of both Wisconsin and Kentucky effectively expand the bases upon which a franchise relationship may be terminated. To do so is impermissible, and so the state laws are preempted. *Mobil Oil Corporation v. Virginia Gasoline Marketers*, 34 F.3d 220 at 224.

We repeat that one specific purpose of the PMPA is "to prevent ... the appropriation of hard-earned goodwill which occurs when a franchisor arbitrarily takes over a business that the franchisee has turned into a successful going concern." *Brach*, 677 F.2d 1213 at 1220. Application of either state's summary eviction statute, without the complex analysis mandated by the PMPA, would permit a franchisor to deprive a franchisee of goodwill without proving the PMPA authorizes such action. This would allow evictions even when the franchisor's decision to evict—and therefore to end the franchise relationship for all practical purposes—is arbitrary or discriminatory. That is in contravention of the objectives of the federal law.

Of course, the district court entered no finding of fact that the parties herein were at the time of trial, or ever had been, parties to a franchise agreement. That is ordinarily a necessary finding of fact for a PMPA preemption analysis, because if the parties were merely ordinary landlord and tenant, then there would be no preemption issue whatsoever. That finding was not necessary for purposes of our analysis, however, because Zad pleaded the existence of a franchise relationship and presented sufficient evidence to put the relationship at issue. Once the PMPA became

an issue, Kentucky's and Wisconsin's state eviction laws were preempted, and the district court could not apply either to evict Zad.

### Conclusions

We reverse the district court's entry of a judgment of forcible detainer against Zad. If Bulk Petroleum wishes to evict Zad, it will have to pursue the applicable federal remedies to do so.

STUMBO, Judge, concurs.

LAMBERT, Senior Judge, dissents and files separate opinion.

LAMBERT, Senior Judge, dissenting:

I concur with much the majority has written, but I must dissent from the conclusion. I am unable to conclude that the PMPA preempts such a fundamental state law as forcible detainer. Rather, the inquiry should be whether the PMPA and state law may coexist.

If it appeared that a state law forcible detainer action was merely a subterfuge to wrongfully dispossess a franchisee, then a PMPA violation would occur. On the other hand, a franchisee should not be permitted to hide behind the PMPA as a means of avoiding its basic duties under the lease, such as payment of rent.

As noted by the majority, the trial court provided no analysis and no insight into its thinking. Therefore, I would remand to the trial court to consider the PMPA as it may apply to the facts presented and to render an appropriate judgment observing state law to the extent possible with due regard to the requirements of the PMPA.