SCALZO, d/b/a Oakwood Mobile Home Park & Sales, Plaintiff-Respondent, v. ANDERSON, and others, Defendants-Appellants.†

Supreme Court

*No. 76–404. Submitted on briefs January 31, 1979.—Decided February 27, 1979.*
(Also reported in 275 N.W.2d 894.)

† Motion for reconsideration denied, without costs, on May 1, 1979.

836

For the appellants the cause was submitted on the brief of *Thomas G. Hetzel* and *Hetzel & Decker* of Kenosha.

For the respondent the cause was submitted on the brief of *Philip Lehner* and *Vaudreuil & Vaudreuil* of Kenosha; and a brief by *David W. Paulson* and *Heft, Dye, Heft & Paulson* of Racine.

COFFEY, J.   This appeal challenges the circuit court order dismissing the appeals of the respective appellants from the Kenosha county court. The circuit court order dated November 10, 1976 also affirmed the judgments of CLARENCE G. TRAEGER, County Judge.

The appellants in this action were tenants in a mobile home park operated by the respondent. Each appellant owned a mobile home and rented a lot from the respondent under essentially identical leases. In October, 1974 appellants, Anderson and Brendum, were served with termination of tenancy notices informing them that their

month-to-month tenancies were being terminated effective November 30, 1974. The reasons for the termination of tenancy given in the notices were: (1) the tenants' violation of Park Rules incorporated into the lease agreement, the alleged violation resulting from a failure to supervise their children, and (2) failure to reimburse the landlord for damages caused by the appellants' children, thus in violation of the lease agreement.

The remaining appellants, the Peters, Slaytons and Seiler, were served with termination of tenancy notices on December 2, 1974, effective on the 31st day of December, 1974. The reason given for the termination was the refusal of the tenants to comply with park rules concerning the removal of trailer hitches in conformity with a clause in the lease agreement adopting set back requirements. The respondent stated in answers to interrogatories the rule is necessary because mobile homes are subject to a City of Kenosha ordinance detailing set back requirements.

On December 4, 1974 respondent commenced an eviction action against Anderson and Brendum under ch. 299, Stats., in the Small Claims Court for Kenosha County seeking restitution of the premises, unpaid rent and taxes and double damages pursuant to ch. 704 for the tenants after termination. The amended complaint also sought additional money damages for his costs in maintaining the actions, including reasonable attorneys' fees as provided in the terms of the lease agreements. Similar eviction actions were initiated January 6, 1975 against the Peters, Slaytons and Seiler.

The answers of the appellants asserted the following: (1) denied that the respondent was the owner of the leased property; (2) denied that they had agreed orally to pay $65.00 per month rent. [The written leases set rent at $42.00. The increase was provided for in a subsequent oral agreement and this greater amount had been paid by each appellant without protest before the

commencement of the lawsuit]; (3) denied information sufficient to form a belief as to whether the termination notices had been served as alleged; (4) denied that they had failed to conform with the terms of the leases; and (5) denied that there were any damages due the respondent for unpaid rent and taxes for their holdover after termination, or for costs. The answers also interposed affirmative defenses alleging that the respondent: (1) failed to comply with his responsibilities as specified in the lease agreements; (2) engaged in "unfair trade practices and methods of competition"; and (3) was attempting to terminate the tenancies for reasons which were untrue or so unreasonable as to be an "unfair trade practice."

Counterclaims were filed requesting damages in the amounts of $10,000. The counterclaims allege that: (1) the respondent had charged more rent than recited in the written lease agreement; (2) the respondent had engaged in unfair trade practices by charging a $250 installation fee; (3) respondent had made representations to appellants that they could occupy their mobile homes for life after purchase of the homes from the respondent, and that appellants entered into the lease agreement in reliance upon such representations. [It should be noted, however, there are no allegations in the Peters', Slaytons' and Seiler's counterclaims that they had purchased their mobile homes from respondent]; and (4) the respondent had interfered with appellants' quiet and peaceable enjoyment of the premises by harassing them and wrongfully attempting to evict them.

In a pretrial hearing conducted in the actions against Anderson and Brendum on January 13, 1975, the parties stipulated before MICHAEL FISHER, County Judge of Kenosha County, Branch 2, that the actions be consolidated with the remaining actions which had been assigned to Branch 3. BURTON A. SCOTT, County Judge, Branch 3, was informed of and consented to this

stipulation at the February 7, 1975 pretrial hearing in the actions against the Peters, Slaytons and Seiler.

The respondent moved for summary judgment against each appellant on the first cause of action for restitution of the premises. Affidavits were submitted in support of this motion, and argued before Judge Fisher on March 21, 1975. The appellants submitted a brief and letter memorandum in opposition to the motion; thereupon the court denied the respondent's motion.

The case was subsequently assigned to Judge Traeger who, at an October 6th hearing, made the following findings: (1) the appellants in this action were occupying the premises as holdovers from the date their tenancies were terminated and further had not paid the monthly parking permit fees assessed pursuant to the City of Kenosha ordinance; (2) as a result of the appellants' refusal to pay the delinquent parking fees, the respondent was forced to pay the delinquent fees; (3) the respondent sought double rent damages under sec. 704.27, Stats., as damages for the appellants' failure to timely vacate the premises and (4) the respondent's financial losses (damages) were increasing at a substantial rate pending the outcome of the litigation.

At a subsequent hearing on the 24th of February, 1975, the court directed that within three weeks after service of the order on the appellants' attorney each appellant was to deposit with the court: (1) double the monthly rent for each month since the commencement of the actions to the date of judgment, or until the appellants vacate the premises. [The double rent damages were to be computed at the $42.00 per month figure recited in the terms of the written lease]; (2) the monthly parking permit fees assessed pursuant to the Kenosha City ordinance for each month from the date of commencement of the actions until either the date of judgment or until appellants vacate the premises; and (3) $250 toward respondent's costs. The order

further provided upon the appellants' failure to deposit the security in the time specified, the court after proper notice and motion will strike the answers of the respective appellants and grant the respondent default judgment.

This pretrial order also dismissed the appellants' counterclaims. The court stated, pursuant to sec. 299.02, Stats., that the allegations set forth in the counterclaims were based upon matters not arising out of the same transaction or occurrence in the subject matter of the respondent's claim. Additionally, that the counterclaims were in excess of the limited jurisdiction ($500) of the Small Claims Court, sec. 299.04 (4), Stats. 1973.

. The appellants moved to vacate, or in the alternative, modify this order. Thereafter, the respondent renewed the motion for summary judgment seeking restitution of the premises and interposed an alternative motion for default judgment against Anderson, Brendum and the Slaytons, based upon their failure to comply with the aforementioned order. On January 5, 1976 Judge Traeger granted the respondent's default motions against Anderson, Brendum and the Slaytons and further allowed the entry of summary judgment on the first cause of action for restitution of the premises against the Peters and Seiler. The order for judgment entered March 22, 1976 against each appellant recites that they had waived their right to a jury trial by a failure to make a timely demand and their failure to pay the required jury fee "at or before the time of joinder of issue" pursuant to sec. 299.21 (3), Stats.

On April 6, 1976 the appellants served a notice of appeal to the circuit court and on July 19, 1976 filed a stipulation of fact in lieu of transcript pursuant to sec. 299.30 (3) and (4), Stats. The respondent moved to dismiss the appeal on the grounds that appellants had failed to file a transcript of the reporter's notes or an agreed statement on appeal or a statement that

the appeal could be supported without a transcript within the 40-day limitation of sec. 299.30(4), and that the appeals were without merit as a matter of law. Circuit Judge Harold M. Bode on November 10th ordered the appeals dismissed finding the appellants had failed to file a transcript of the reporter's notes, or an agreed statement on appeal or a statement that the appeal could be supported by the case file without a transcript within the 40-day limitation of sec. 299.30(4). The circuit judge additionally affirmed the substantive aspects of the judgments.

The parties raise the following issues:

1. Whether the administrative code of Wisconsin, AG. 125.06(1) shall be interpreted to provide that a mobile home park operator may only terminate a month-to-month tenancy on proof of cause for termination, and whether the cause for termination as recited in the notice must meet standards of "reasonableness?"

2. Whether ch. 299, Stats., eviction proceedings are summary in nature entitling the respondent to summary judgment for restitution after proving the appellants had raised no cognizable defense and that the counterclaims required dismissal as not arising out of the same transaction or occurrence as the subject of respondent's claim?

3. Whether the court abused its discretion in requiring the defendants in an eviction action to deposit money into court as security for the plaintiff's damages as the defendants continue to occupy the premises without paying rent as holdovers?

4. Whether the failure to file a "stipulation in lieu of transcript" within 40 days on an appeal from county court to circuit court is a mandatory ground for dismissal of such appeal?

5. Whether the appellants were denied due process of law as a result of the trial court's order denying a jury trial?

6.  Whether the appellants were denied a fair hearing in violation of due process by the circuit court's alleged failure to read the affidavits submitted with respect to the motion to dismiss the appeal?

The appellants contend that the provision of AG. 125 of the Administrative Code control matters pertaining to the eviction of mobile home residents. The appellants (tenants) claim that the county court permitted the respondent (landlord) to evict them, contrary to Administrative Code regulations, relying upon sec. 125.06, which reads as follows:

"AG. 125.06. Termination of Tenancy.
"(1) Notices of Termination of tenancy shall comply with provisions of chapter 704, Stats., and in addition thereto shall specify the reason for such termination."

Based upon this regulation, the tenants argue that before they can be evicted the respondent landlord is required to prove the "truthfulness" and "reasonableness" of the alleged grounds for termination of the respective tenancies. Judge Fisher, before disqualifying himself, denied the respondent's motion for summary judgment, and agreed with the appellants' interpretation of AG. 125.06(1). However, following the assignment of the case to Judge Traeger, he reversed Judge Fisher and determined that AG. 125.06(1) does not require that a landlord prove the reasonableness of the cause for termination.

The record clearly reflects that in compliance with AG. 125.06(1), each appellant's notice of tenancy termination specified the cause for said termination. The notices served upon Anderson and Brendum particularized the failure to supervise their children in violation of park rules and the failure to pay damages. These appellants (Anderson and Brendum) do not dispute that if proven the alleged reasons for termination would constitute a

breach of their lease terms. The Peters, Slaytons and Seiler were given notices citing their non-compliance with the trailer hitch set back ordinance requirement. However, these appellants (the Peters, Slaytons and Seiler) claim that IND. 14.23(2) of the administrative code bars the respondent from requiring the removal of the trailer hitches. This administrative rule sets forth that the construction of mobile homes be in accordance with methods approved under the code; further, that any plans, specifications, warranties, quality control or parts shall not be changed without written consent of the approving agency. Also, the rule provides that no person shall alter a mobile home that would cause non-compliance with these rules. However, these appellants failed to prove the applicability of this section of the administrative rules to the mobile homes in question as IND. 14.003 states that the code does not apply to mobile homes manufactured before October 1, 1974.

The appellants contend that in an eviction action against mobile home tenants, AG. 125.06 requires that the respondent must establish the reason for termination. It is claimed that this interpretation is required in order to protect the tenants from being moved out at the whim of the landlord. The appellants' contention is in error. The rule states only that the reason for termination must be given to the tenant and consequently, the ability of a landlord to terminate a month-to-month tenancy without cause is not abrogated. Sec. AG. 125.06 additionally recites that termination notices shall comply with the provisions of ch. 704, Stats. Sec. 704.19(4) requires that a landlord must "substantially inform" the tenant of his intention to terminate the tenancy.

However, neither sec. 704.19(4) nor AG. 125.06(1) abrogate the right of a landlord to terminate the tenancy pursuant to sec. 704.19(3) which reads:

"LENGTH OF NOTICE. At least 28 days' notice must be given except in the following cases: If rent is payable on a basis less than monthly, notice at least equal to the rent-paying period is sufficient; all agricultural tenancies from year-to-year require at least 90 days' notice."

The truthfulness or reasonableness of the cause for termination is not required nor is it of material significance when a landlord uses a 28 day notice of termination procedure. This concept was recently explained in *Bullen v. Fellner,* 86 Wis.2d 116, 121, 271 N.W.2d 673 (1978) where the court stated:

"A landlord may choose to terminate the tenancy by statutory notice rather than eviction, subject to the prohibitions against 'retaliatory evictions'" *supra* at 121.

Statutory 28-day notice of termination does not require that a landlord prove a breach of a lease covenant and therefore is not analogous to the provisions of sec. 704.17 providing for a fourteen-day notice period after breach of the lease. If a lease has been breached and a termination of tenancy is issued pursuant to sec. 704.17, the notice necessarily includes the requirements of truthfulness and reasonableness. However, in this case the tenancies were terminated not by a 14-day notice provision but by 28-day notices. Therefore, AG. 125.06(1) is not germane to the appellants' contentions.

Judge Traeger in evicting the appellants made the following findings: (1) that a month-to-month tenancy existed between the respondent and the respective appellants; (2) each of the appellants had been served with

proper notice of termination of tenancy; and (3) the tenants had remained on the premises as holdovers. Pursuant to the above findings, the eviction complied with the requirements of ch. 299, Stats.

Secondly, the appellants claim it was error for the trial court to dismiss their defenses and counterclaims. The judge dismissed the pleadings on the basis that the allegations contained therein did not comply with ch. 299 procedures as the facts recited in the pleadings did not arise out of the same transaction or occurrence that is the subject matter of the respondent's claim.

The appellants in their answers and counterclaims allege that the respondent failed to comply with the terms of the lease, and engaged in unfair trade practices. The unfair trade practices claim alleges that the lease agreement provided that the tenants were required to pay reasonable costs and fees for the enforcement of lease covenants. Further that the requested rent damages at double the daily rate is not contained in the lease nor is it a requirement in AG. 125 of the Administrative Code.

An action for eviction under ch. 299, Stats., is intended to be a summary proceeding as pointed out in the authoritative article authored by Dean Boden entitled "1971 Revision of Eviction Practice in Wisconsin," 54 Marq. L. Rev. 298 (1971). The article states, by incorporating an action for eviction within ch. 299 procedures, the legislature intended to provide a "speeded up" forum in line with the "general feeling that eviction proceedings should be as summary as possible because there is . . . seldom an issue for trial." *supra* at 302.

The decisions of this court have held that there are a very limited number of issues permissible in an eviction action. In *Clark Oil & Refining Corp. v. Leistikow,* 69 Wis.2d 226, 234–35, 230 N.W.2d 736 (1975), they

were recited as the following: (a) whether the relation of landlord and tenant exists between the parties; (b) whether the tenant is holding over; (c) whether proper notice was given; (d) whether the landlord has proper title to the premises, and (e) whether the landlord is attempting retaliatory eviction. This case sets forth the above referred to limited guidelines to insure that the ultimate issue in any eviction proceeding is simply who has the right to possession of the premises. *Id.* at 235.

Applying the case law recited above, the appellants' defenses of the respondent-landlord's breach of lease terms and unfair trade practices are impermissible in a ch. 299 proceeding as not falling within any of the above recited factors. Therefore, the respondent was properly granted restitution of the premises.

Sec. 299.02(2), Stats., qualifies the type of counterclaim permissible in an eviction action:

"If a counterclaim . . . is filed which does not arise out of the same transaction or occurrence that is the subject matter of the plaintiff's claim and which is beyond the limitations of s. 299.91, the court shall dismiss the same and proceed under this chapter."

Sec. 299.43 reinforces this statute in eviction actions and these statutes have been narrowly construed in the *Clark Oil case* and *Rossow Oil Co. v. Heiman,* 72 Wis.2d 696, 242 N.W.2d 176 (1976). These cases state that counterclaims in an eviction action are not recognizable if they are based on matters extrinsic or collateral to the lease and not arising from the same transaction or occurrence that is the subject matter of the plaintiff's eviction suit, namely, the lease and the holdover of possession.

Additionally, in *Malic v. Kellogg,* 118 Wis. 405, 95 N.W. 372 (1903), this court held that an agreement

by the landlord to make certain improvements which he subsequently breached was a transaction independent of the lease. The court granted the eviction remedy for failure of the tenant to pay rent, but noted that the result would have been different if the suit had been only for back rent and these counterclaims had been made. *supra* at 409. It appears in the recent case of *Bullen v. Fellner, et al., supra,* that part of the *Mallic* holding has been overruled. In *Bullen* the court reached the conclusion that upon a tenant's agreement to pay an increased monthly rental in exchange for the landlord's express promise to bring the building up to code, the agreement is a bar to ch. 299 eviction proceedings if the landlord has failed to repair the premises pursuant to the terms of the specific agreement. However, the court's holding in the *Bullen* case was limited to a specific set of facts and the decision recites:

"The specific agreement to repair in consideration of increased rental payments is the sole basis upon which this decision concerning the landlord-tenant problem of building code violations is made. Future cases of a similar nature will be decided upon their own particular merits." *supra* at 121.

In application to the appeal at bar the alleged counterclaims relate to an increase in rental charges as a result of an oral agreement, unfair trade practices and competition, alleged oral guarantees and an interference with quiet enjoyment. The respondent's summary eviction proceeding is based solely on the appellants' failure to comply with the conditions of the signed leases, specifically, their failure to supervise children, pay damage assessments and remove trailer hitches as provided in the park rules incorporated into the leases. Therefore, the counterclaims set forth certain allegations detailing the alleged agreement between the parties as to matters foreign to the terms of the written lease. Thus,

the counterclaims, as well as the appellants' answers, were properly dismissed.

The appellants, for their third issue, protest that they find no authority for the trial court's action in ordering them to pay security into court for the respondent's potential damages and in the alternative their failure to do so would result in striking of their answers and default judgment for the respondent. The appellants state that this order is forcing them to "purchase justice" in violation of the Wisconsin Constitution, Art. I, sec. 9 and is a prejudgment award of damages.

The respondent, on the other hand, argues that the initial hearing in this "summary proceeding" came ten months after the final eviction actions were commenced and that the order was necessary to protect him from the escalating damages caused by the delay in resolving the dispute.

Further, the respondent attributes this delay to changing judicial assignments as a result of the appellants' attorney's pre-trial tactics and motions. The record reflects that during this time the appellants were occupying the premises without a lease and had not paid rent since the commencement of the actions in December, 1974 and January, 1975. Further, they had refused to pay the monthly parking permit fees which the respondent was required by ordinance to pay in lieu of their nonpayment. The trial court determined the necessity for the security deposit in order to protect the landlord against suffering further loss as his daily damages were escalating at a rapid rate pending court determination. The dilatory manner by which the appellants proceeded in this action is further evidenced by the fact that they waited over 100 days to file a stipulation in lieu of transcript and effectively prolonged the final determination of this eviction action.

It should be noted that the exist statutory analogies to the trial court's order that the appellants pay security in order to protect the landlord's interests should he

succeed in the eviction action. Sec. 299.30(3), Stats., requires an appellant to file an undertaking in an amount that will reflect the costs and disbursements of the appeal or rent or damages accruing to the respondent during the pendency of the appeal. It should be noted that the terms of Judge Traeger's order are in substantial conformity with the requirements of sec. 299.30(3). The payment of security prior to final disposition is also consistent with secs. 814.27 and 814.28 providing that a plaintiff may be required to give sufficient security for costs as may be awarded against him. *See also:* 20 Am. Jud. 2d *Costs,* sec. 37.

While there is no express statutory authority for a court to order the tenants to pay security pending the outcome of the eviction proceedings, this procedure was applied by this court in the recent case of *Bullen v. Fellner, supra.* The court ordered in the following language:

"On the motion of appellants, the court having reviewed the record, and the briefs,

"IT IS ORDERED that pending the appeal in each of the above actions, the eviction of the appellants is stayed on the condition that on July 1, 1978, and on the first day of each succeeding month, the appellants in each action shall deposit with the Clerk of Circuit Court for Dane County the sum of $150 as rent to be paid by said Clerk to the respondent within ten days of deposit. Failure to pay the said rent on time shall terminate the stay and the Clerk of Circuit Court shall promptly certify to the Clerk of the Supreme Court the failure to pay such rent."[1]

Based upon the analagous statutes and our action in *Bullen,* this court does not find an abuse of trial court discretion by requiring the appellants to deposit security for the respondent's costs and damages while the eviction actions are pending.

[1] Order issued on June 19, 1978.

The appellants fourth issue will not be reached. Whether the circuit court erred in dismissing the appeal based upon the appellants' failure to file a timely transcript of the reporter's notes or an agreed statement on appeal or a statement that the appeal could be supported by the case file without the transcript within the 40-day limitation of sec. 299.30(4) is irrelevant in light of the fact that this court has reviewed this appeal upon the merits of the first three issues.

The fifth and sixth issues will be briefly addressed. The appellants' right to a jury trial in a ch. 299 proceeding is controlled by sec. 299.21(3) which recites:

"TRIAL BY JURY. (a) Any party may, upon payment of the fees specified in paragraph (b), file a written demand for trial by jury. If no party demands a trial by jury, the right to trial by jury is waived forever. In eviction actions, such demand shall be filed at or before the time of joinder of issue, in all other actions within 20 days thereafter."

In the present case, the second group of actions were commenced January 6, 1975 and issue was joined by the appellants' answers on February 7, 1975. The Demand for Jury Trial was served May 21, 1975 and the jury fee was paid into court after the counterclaims were dismissed on October 24, 1975. Appellants claim they believed their counterclaims took them out of the ch. 299 procedure because the counterclaims exceeded the jurisdictional limits of the chapter. However, sec. 299.21 (4), Stats. 1973, states that "If there is a demand for a trial by jury, the parties shall proceed as if the action had originally been begun as a proceeding under Title XXV; . . ."[2] This subsection would remove the proceedings from ch. 299 procedure, as would the excessive counterclaims, yet the jury demand is still required to be made at or before joinder of the issues in the eviction action.

---

[2] Rules of Civil Procedure, ch. 260 et seq., renumbered and recreated as Title XLIIA, ch. 801, et seq.

This court has held that the right to a jury trial is forfeited if not timely requested except upon proof of excusable neglect. *See: State ex rel. Prentice v. County Court of Milwaukee,* 70 Wis.2d 230, 234 N.W.2d 283 (1975). In the instant case, the delay was in excess of 100 days beyond the time for jury demand. The appellants have not proven this delay was a result of excusable neglect.

Finally, it is alleged that the circuit court prejudiced the appellants due process rights by not reading the affidavits submitted on the motion to dismiss the appeal. A review of the record demonstrates that the trial court knew the contents of the court file and his findings indicate an adequate familiarity with the facts and arguments presented to the court by respective counsel. Thus, the circuit court's actions comport with the basic notions of due process.

*By the Court.*—Order affirmed.

The following opinion was filed May 3, 1979.

PER CURIAM (On reconsideration). On page 850 of our opinion the following appears:

"The appellants, for their third issue, protest that they find no authority for the trial court's action in ordering them to pay security for the respondent's potential damages and in the alternative their failure to do so would result in striking of their answers and default judgment for the respondent. The appellants state that this order is forcing them to 'purchase justice' in violation of the Wisconsin Constitution, Art. I, sec. 9 and is a prejudgment award of damages."

The appellants on motion for reconsideration again assert this issue. We now conclude this issue is moot. We withdraw that portion of the opinion dealing with this issue and express no opinion concerning it.

A rehearing of the appeal is not required. However motions for summary judgment were pending against each of these three defendants at the time the default judgments were entered. Summary judgments for eviction were entered against the two other defendants, based on their failure to raise any cognizable defenses or counterclaims. Since all of the defendants raised essentially the same defenses and counterclaims, the actions against the three defendants would have been determined by summary judgments against them if the default judgments had not been entered. There being no disputed questions of fact and the issue being one of law, it is appropriate for this court to grant summary judgments against these defendants.

Motion for reconsideration is denied without costs. Default judgments are vacated and summary judgments are to be entered against Marlene Anderson, Sharon Brendum, and Richard and Diane Slayton.