# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 14, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP658**

STATE OF WISCONSIN

Cir. Ct. No. 2023SC608

IN COURT OF APPEALS
DISTRICT IV

THOUSAND OAKS MHC LLC,

　PLAINTIFF-RESPONDENT,

V.

JAMES CANFIELD,

　DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Wood County: GEGORY J. POTTER, Judge. *Reversed and cause remanded for further proceedings.*

¶1　TAYLOR, J.[1]　James Canfield appeals a judgment of eviction entered by the Wood County Circuit Court in favor of Thousand Oaks MHC, LLC

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

("Thousand Oaks"). Thousand Oaks operates a manufactured home community in which it rents sites for the placement of manufactured homes. Following the expiration of a one-year written lease between Canfield and Thousand Oaks for the rental of a site on which Canfield placed his manufactured home, Thousand Oaks delivered a 28-day notice terminating Canfield's tenancy, alleging that Canfield was violating various lease terms. When Canfield did not remove his manufactured home within the timeframe provided in the notice, Thousand Oaks initiated this eviction action, and the circuit court eventually entered a judgment of eviction in favor of Thousand Oaks.

¶2    Canfield alleges on appeal that the circuit court's judgment of eviction in favor of Thousand Oaks was in error because Canfield was not permitted to cross-examine Thousand Oaks's sole witness or to present a defense. I agree that the court erred on these grounds. Accordingly, I reverse the opinion of the circuit court, vacate the judgment of eviction, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3    The following facts are undisputed. Canfield and Thousand Oaks entered into a written lease agreement from April 1, 2022 through March 31, 2023 for the rental of a manufactured home site upon which Canfield placed his manufactured home which served as his residence. The terms of the lease incorporated "Community Rules" that were enumerated in a separate document and limited tenants to maintaining two domestic house pets, including cats, which I refer to as the "pet rule." In addition to signing the lease, Canfield returned a signed receipt indicating that he had received a copy of the Community Rules. Canfield indicated in the signed lease that he did not have any pets by writing his

initials next to a line in the lease that read "I have 0 pets," and his lease did not include any monthly pet fee.

¶4 The dispute between the parties arose when Canfield's lease expired on March 31, 2023, and he did not sign a lease for the 2023-2024 year. Canfield continued to make monthly rent payments, which Thousand Oaks accepted. On April 13, 2023, Thousand Oaks delivered to Canfield by certified mail a "5 Day Notice to Remedy Default or Vacate" based on Canfield's alleged violation of the pet rule. On May 9, 2023, citing to WIS. STATS. §§ 704.17 and 710.15([5]m), Thousand Oaks delivered to Canfield by certified mail a "28 Day Notice of Non-Renewal of Rental Agreement" (the "28-day notice"), alleging that Canfield breached the terms of the rental agreement; violated community rules that endangered the health or safety of others; and refused to sign a lease agreement. Specifically, Thousand Oaks alleged that Canfield violated the pet rule and failed to sign a lease agreement. The 28-day notice required that Canfield vacate the manufactured home site by June 30, 2023. When Canfield did not vacate the site by that date, Thousand Oaks filed the eviction action, alleging the same specific grounds for eviction that were set forth in the 28-day notice.

¶5 Both parties appeared pro se for the eviction hearings, with Kathy Meyer appearing as the representative and sole witness for Thousand Oaks. On the court's questioning, Meyer and Canfield agreed that the written lease for a one-year term had expired and Canfield was a month-to-month tenant. Meyer was then sworn in, and the entirety of Meyer's testimony about the basis for the eviction consisted of the following:

> Court: All she has to do is file a 28[-]day eviction and she can have you removed for that alone.
>
> Meyer: Which is what we did.

> Court: So then she has the right to evict you if you're on a month-to-month lease and she only has to give you 28 days advance notice.
>
> Canfield: There's more to it than that, Your Honor.
>
> Court: No, there isn't. You're on a month-to-month lease.

Canfield's attempt to address issues in dispute concerning the eviction were not entertained. The court asked the parties to return the following morning after Canfield received information about the timing of removing his manufactured home from the site.

¶6    During the continued hearing the next morning, Canfield stated that it would take between ten and twelve weeks to secure a moving company to remove his manufactured home from the site. Although there had been no testimony by either party regarding the presence or number of cats Canfield allegedly maintained in his manufactured home, the circuit court proposed two resolutions to the parties, provided Canfield continued to pay rent: Canfield could remove his manufactured home earlier than the ten to twelve weeks he estimated he needed and keep "the 12 cats"; or "we can allow you to stay longer and you remove a number of the cats until you're able to move the trailer…. Do you have a place where you could take nine of those cats?" Canfield agreed to think about different homes for some of the cats, and the court again continued the hearing.

¶7    At the continued hearing five days later, the circuit court summarized on the record a stipulation that the parties had reached whereas Canfield agreed to remove some of the cats and Thousand Oaks agreed to give Canfield ninety days to remove his manufactured home from the site. No written judgment of eviction was issued at that time. Nonetheless, Canfield subsequently filed an appeal of the court's eviction decision, which was dismissed by this court

for lack of jurisdiction due to the absence of a final written eviction order by the circuit court.[2] On March 28, 2024, following the dismissal of Canfield's first appeal, the circuit court entered a written judgment of eviction in favor of Thousand Oaks from which Canfield now appeals.[3]

¶8    I reference additional facts below as needed.

## DISCUSSION

¶9    The dispositive issue on appeal is whether the circuit court erred when it entered the judgment of eviction in favor of Thousand Oaks without

---

[2] *See **Thousand Oaks MHC LLC v. James Canfield**, No. 2023AP2172, op. and order (WI App Mar. 25, 2024).

[3] Although the circuit court signed two separate writs of restitution, both were returned unsatisfied, and it does not appear from the record that a writ of restitution was ever executed. The writ of restitution issue is not raised on appeal, and I do not address it further.

5

Canfield having an opportunity to cross-examine Meyer and to present a defense.[4] I conclude the court erred in both respects.[5]

¶10 Application of a set of undisputed facts to a legal standard is a question of law reviewed de novo. *See State v. Brandt*, 226 Wis. 2d 610, 618, 594 N.W.2d 759 (1999). Generally, in an eviction action, the landlord bears the burden to prove a lease violation by the greater weight of the credible evidence. *See* WIS JI—CIVIL 3094.

¶11 This case also requires that I interpret and apply the small claims statutes that govern eviction actions, namely WIS. STAT. § 799.209. Our supreme court has repeatedly held that statutory interpretation "'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

---

[4] I note that both parties fail to comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule has been amended, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for eFiling. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, RULE 809.19.

[5] On appeal, Canfield additionally disputes certain lease terms and alleges that he was evicted in retaliation. *See* WIS. ADMIN. CODE § ATCP 134 (through July 2025) (regulating residential rental practices, including the identification of prohibited rental agreement provisions and prohibited practices). Because I reverse and remand for further proceedings on other grounds, I do not address Canfield's additional arguments for reversal. *See Lamar Cent. Outdoor, LLC v. DHA*, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("'An appellate court need not address every issue raised by the parties when one issue is dispositive.'" (quoted source omitted)).

¶12 Before I discuss the parties' arguments on appeal, there were several general agreements between the parties in the circuit court proceedings that are relevant to the discussion here. First, the court and the parties agreed that because Canfield's written lease had expired and he was paying rent on a monthly basis, which was accepted by Thousand Oaks, Canfield was on a month-to-month periodic tenancy at the time the eviction action was commenced.[6] Therefore, I assume without deciding that Canfield was a holdover periodic tenant pursuant to WIS. STAT. § 704.25, and subject to the same terms and conditions of the original lease that are at issue here. Second, with the exception of the grounds for eviction alleged in the 28-day notice, Canfield did not challenge the sufficiency of the 28-day notice he received regarding the termination of his tenancy.[7] Therefore, I additionally assume without deciding that the 28-day notice was proper.

¶13 However, as pertinent here and as overlooked by the circuit court, Thousand Oaks not only had to deliver proper notice of the termination of Canfield's tenancy, but had to establish by the greater weight of the credible evidence the grounds for the eviction. As the operator of the manufactured home

---

[6] A "periodic tenancy" may be created if the tenant holds over after the expiration of a lease, the tenant continues to pay rent, and the landlord accepts the rent on a periodic basis. WIS. STAT. § 704.25(2). In such a case, the tenancy is generally governed by the same terms and conditions as those of the original lease. *See* § 704.25(3).

[7] Although the 28-day notice Thousand Oaks delivered to Canfield stated that it was for a non-renewal of a rental agreement, Canfield's lease had already expired at the time the notice was delivered. As noted, the parties agreed in the circuit court proceedings that Canfield was a month-to-month periodic tenant, and they have treated this case as involving the termination of Canfield's month-to-month tenancy rather than as a non-renewal of Canfield's lease. I follow the parties' lead and do the same.

community,[8] Thousand Oaks bore the burden of proof for terminating the tenancy of a resident of a manufactured home site which is governed by additional statutory provisions set forth, in pertinent part, in WIS. STAT. § 710.15(5m):

> [T]he tenancy of a resident or occupant in a [manufactured home] community may not be terminated, nor may the renewal of the lease be denied by the community operator, except upon any of the following grounds:
>
> ….
>
> **(d)** A breach of any term of the lease.
>
> **(e)** Violation of community rules that endangers the health or safety of others or disrupts the right to the peaceful enjoyment and use of the premises by others, after written notice to cease the violation has been delivered to the resident or occupant.
>
> ….
>
> **(i)** Refusal to sign a lease.
>
> ….
>
> **(k)** Other good cause.

§ 710.15(5m)(d), (e), (i), and (k). Accordingly, an operator of a manufactured home community seeking to terminate a periodic tenancy with a resident must not only provide appropriate notice, but must also prove by the greater weight of the credible evidence that statutory grounds exist for doing so. *See* WIS JI—CIVIL 3094; *see **Logterman v. Dawson***, 190 Wis. 2d 90, 102, 526 N.W.2d 768 (Ct.

---

[8] An "Operator" is defined by statute to mean "a person engaged in the business of renting plots of ground or mobile homes or manufactured homes in a community to mobile home or manufactured home owners or occupants." WIS. STAT. § 710.15(1)(d). A "manufactured home community" is defined as "a tract of land containing 3 or more plots of ground upon which mobile homes or manufactured homes are located in exchange for the payment of rent or any other fee pursuant to a lease." § 710.15(1)(ad).

App. 1994) (a mobile home site tenancy may be terminated under § 710.15(5m) on grounds that include a failing septic system).

¶14    As noted, Thousand Oaks's 28-day notice and eviction complaint alleged two specific grounds for termination under WIS. STAT. § 710.15(5m): a violation of the pet rule and a refusal to sign the lease agreement. *See* § 710.15(5m)(d), (e), and (i).  Yet the record is devoid of any sworn testimony in support of these allegations.  Rather, the circuit court's eviction determination was rooted solely in its conclusion that proper notice of termination was provided.  As noted, Meyer presented minimal testimony, confirming only that Thousand Oaks sent Canfield the required notice terminating his tenancy.  Canfield was not afforded an opportunity to challenge the grounds alleged by Thousand Oaks for terminating his tenancy by questioning Meyer under oath or to present evidence, which Canfield asserts contravenes the statutory rights of parties in eviction actions.  I agree.

¶15    Eviction actions are governed by Chapter 799 of the Wisconsin Statutes.  WIS. STAT. § 799.01(1)(a); WIS. STATS. §§ 799.40-.45.  In the absence of a jury demand, eviction trials are to the court.  WIS. STAT. § 799.21(1)-(2).  While eviction trials are conducted informally, each party is allowed "to present arguments and proofs and to examine witnesses to the extent reasonably required for full and true disclosure of the facts."  WIS. STAT. § 799.209(1).  The statutory procedure dictates that the court "*shall* endeavor to ensure that the claims or *defenses of all parties* are fairly presented[.]"  § 799.209(3) (emphasis added); *see also* **Dickhut v. Norton**, 45 Wis. 2d 389, 399, 173 N.W.2d 297 (1970) (a defendant opposing an eviction action arising from a periodic tenancy may raise a defense of retaliatory eviction); **Bullen v. Fellner**, 86 Wis. 2d 116, 121, 271 N.W.2d 673 (1978) (non-payment of rent cannot form the basis of an eviction

where defendants-tenants raise landlord's breach of an express contract to make repairs as a defense).

¶16    Although eviction trials are less formal proceedings, I do not interpret the referenced statutory provisions governing eviction actions, absent an agreement between the parties, as allowing the circuit court to dispense entirely with the taking of evidence, including affording the parties the right to cross-examine witnesses.

¶17    Although Canfield attempted to dispute the grounds for the eviction at the initial hearing, including an assertion to the circuit court that there was "more to it" than Thousand Oaks merely providing proper notice to him terminating his tenancy, he was not afforded the opportunity to challenge the grounds alleged in support of the termination through the cross-examination of Meyer or through his own presentation of evidence.  Canfield's ability to do so was particularly important in this case because, as noted, Thousand Oaks had to establish grounds beyond providing adequate notice to terminate his tenancy and obtain a judgment of eviction against Canfield.  Canfield's initial attempts to make his arguments were largely rebuffed by the court's sole determination that because Canfield received proper notice of the termination of his tenancy, the eviction action should be granted.

¶18    Thousand Oaks does not meaningfully dispute Canfield's assertions that he was entitled to, and deprived of, an eviction trial and the opportunity to examine witnesses and present a defense, and it cites to no facts or legal authority that contradict such assertions.  *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (lack of response may be taken as a concession); ***Schlieper v. DNR***, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct.

App. 1994) ("respondents cannot complain if propositions of appellants are taken as confessed which respondents do not undertake to refute."). Further, a contrary position would have been rejected as violating the plain statutory language in WIS. STAT. § 799.209, which, as noted, states that in small claims actions, parties are entitled to a trial and to present a defense. *See Kalal*, 271 Wis. 2d 633, ¶46 ("'In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute.'" (citation omitted)). Rather, Thousand Oaks argues that the circuit court properly granted the eviction in its favor because: (1) Canfield's true dispute is with the lease terms, particularly the pet rule, which Thousand Oaks argues is beyond the scope of an eviction proceeding; and (2) Canfield acknowledged that Thousand Oaks had a right to reclaim their property and evict him. Neither argument is persuasive for the following reasons.

¶19 Thousand Oaks asserts that Canfield's "arguments" to the circuit court would have been beyond the scope of an eviction action because no cause for the termination of a periodic tenancy needed to be provided. This position ignores the requirements in WIS. STAT. § 710.15(5m) regarding the grounds for terminating a resident's tenancy in a manufactured home site. A citation to this statute appears in the 28-day notice, and the statutory grounds for the termination of the tenancy and eviction is referenced in each document.[9]

¶20 Thousand Oaks's reliance on *Scalzo v. Anderson*, 87 Wis. 2d 834, 275 N.W.2d 894 (1979), in support of its position that no grounds beyond

---

[9] Thousand Oaks's 28-day notice also cites to WIS. STAT. § 704.17, which is another statute that requires the landlord establish cause to terminate a tenancy. Section 704.17 focuses on failure to pay rent, damage to the property, and law enforcement involvement with nuisances on the property; however, neither the parties nor the circuit court relied on § 704.17 in the proceedings before the court or before me here, so I do not address it.

providing proper notice need to be found for the circuit court to grant the eviction in its favor is also misplaced. Our supreme court decided *Scalzo* in 1979, before the Wisconsin Legislature enacted WIS. STAT. § 710.15(5m) to require grounds for the termination of the tenancy for a manufactured home site. *Compare Scalzo*, 87 Wis. 2d 834, 846; 1985 Wis. Act 235; WIS. STAT. § 710.15. Consequently, *Scalzo* had no occasion to consider or apply § 710.15. *See also Logterman*, 190 Wis. 2d 90, 102 (applying § 710.15 to terminate a tenancy in a mobile home community).

¶21 Additionally, *Scalzo* considered a termination of a tenancy with a 28-day notice provided pursuant to WIS. STAT. § 704.19, which does not require additional grounds for termination.[10] *See Scalzo*, 87 Wis. 2d at 846. As noted, Thousand Oaks's 28-day notice terminating Canfield's tenancy is also subject to WIS. STAT. § 710.15, which affirmatively requires Thousand Oaks to provide a statutory ground for terminating the tenancy with Canfield, "[*n*]*otwithstanding*" the notice requirements of WIS. STAT. §§ 704.17 or 704.19. Although Thousand Oaks did allege statutory grounds for the termination, no evidence was introduced at trial to support the grounds alleged, and Canfield was provided no opportunity to challenge the grounds alleged through cross-examination or by the presentation of his own evidence. Further, outside of the finding that Canfield received proper notice of the termination of his tenancy, the circuit court made no findings of any ground to support the termination of Canfield's tenancy pursuant to § 710.15(5m).

¶22 In regard to Thousand Oaks's argument that Canfield acknowledged grounds for his eviction, Thousand Oaks fails to provide a record cite in support of

---

[10] The operative statute analyzed by the Wisconsin Supreme Court in *Scalzo* is substantially the same as the 2023-24 version. *Compare* WIS. STAT. § 704.19 (1973-74) and WIS. STAT. § 704.19 (2023-24).

this assertion. I need not consider arguments that are unsupported by adequate factual citations or are otherwise undeveloped. *See Dieck v. Unified Sch. Dist. of Antigo*, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990) (unsupported factual assertions need not be considered without a record cite). Thousand Oaks may have intended to reference the following exchange between Canfield and the circuit court:

> Court: But they should have the right to reclaim their property and rent it out.
>
> Canfield: I can't argue with that logic.

This exchange occurred after the court had concluded that Thousand Oaks's 28-day notice alone was sufficient to terminate Canfield's tenancy and evict him. Within this context, it appears that Canfield was attempting to secure favorable terms for the removal of his manufactured home. To the extent that Thousand Oaks's attributes significance to Canfield's response, it is overstated and cannot be reasonably construed as negating Canfield's central argument that he was denied the right to an eviction trial where he had the opportunity to cross-examine witnesses and to present a defense.

¶23 In sum, I conclude that Canfield is entitled to an eviction trial that includes an opportunity to cross-examine witnesses and present a defense.

## CONCLUSION

¶24 The judgment of eviction in favor of Thousand Oaks is reversed, and the case is remanded for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.