COURT OF APPEALS
DECISION
DATED AND FILED

May 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP909**

STATE OF WISCONSIN

Cir. Ct. No. 2025SC1363

IN COURT OF APPEALS
DISTRICT IV

PRAIRIE PARK ESSENTIAL HOUSING, LLC,

PLAINTIFF-RESPONDENT,

V.

CECELIA REDD,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

¶1 GRAHAM, P.J.[1] Cecelia Redd, pro se, appeals a judgment of eviction in favor of Prairie Park Essential Housing, LLC. I reject Redd's arguments and affirm the judgment of eviction.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

**BACKGROUND**

¶2      Redd had a one-year residential lease with Prairie Park. Her housing was part of the federal low-income housing tax credit program, and her rent was subsidized by the community development authority (the "CDA"). According to Prairie Park, Redd did not consistently make timely rent payments as they came due during the term of the lease.

¶3      Redd's lease expired at the end of November 2024, but she did not vacate the apartment. She instead paid rent for December, and Prairie Park accepted the payment on December 5. It is undisputed that these circumstances created a month-to-month tenancy. *See* WIS. STAT. § 704.25(2)(b)-(c) (if a tenant "holds over after the expiration of [a residential] lease," the landlord's acceptance of subsequent rent payments under the circumstances here is an election to hold the tenant to a month-to-month tenancy).

¶4      On December 31, 2024, Prairie Park delivered a termination notice to Redd pursuant to WIS. STAT. § 704.19 (setting forth requirements for a notice that terminates a periodic tenancy). The notice stated that Prairie Park was terminating Redd's month-to-month tenancy effective January 31, 2025, and that Redd would be required to vacate the apartment by that date. The notice also identified past-due payments that Redd allegedly owed.

¶5      Redd made another payment for January rent on January 7, 2025. Prairie Park accepted the payment.

¶6      Redd did not vacate the apartment by the January 31, 2025, date specified in the termination notice. Prairie Park filed the underlying circuit court case seeking her eviction.

¶7     The circuit court held an eviction trial on March 14, 2025. Although the trial transcript was not made part of the record on appeal, I understand that the court determined that Prairie Park was entitled to terminate the lease and to a judgment of eviction if Redd did not voluntarily leave the apartment. However, the court opted to hold the matter open to give Redd an opportunity to vacate the apartment by April 13.

¶8     In late March 2025, Redd filed a motion for a hearing, which was purportedly based on new evidence. The circuit court temporarily stayed its prior order and scheduled a hearing on the motion, and Redd retained an attorney to represent her at the hearing. After allowing the parties to present testimony and exhibits, the court denied the motion, granted the judgment of eviction, and issued a writ of restitution. The court's decision was dated April 24, 2025, and the clerk of court issued a writ of restitution that same day.

¶9     Then on May 7, 2025, a sheriff's deputy executed the writ of restitution and removed Redd from the premises. Later that afternoon, Redd filed an emergency motion in this court that sought a stay of the writ.

¶10    The following day, this court temporarily stayed the writ, not knowing it had already been executed. The stated purpose of the temporary stay was to allow Redd an opportunity to show whether she had complied with WIS. STAT. § 799.445, which sets forth requirements for obtaining a stay of an eviction pending appeal. The following week, after learning that the writ had been executed prior to the imposition of the temporary stay, this court lifted the stay. At some point after the writ of restitution was executed, Prairie Park disposed of Redd's property.

¶11    Redd appeals the judgment of eviction.

**DISCUSSION**

¶12 Redd makes four main arguments on appeal. She first argues that the notice that Prairie Park issued to terminate her tenancy was invalid. This argument about the validity of the termination notice turns on Redd's assertion that the notice intentionally misstated the amount of past-due rent she owed at the time the notice was sent.

¶13 As noted, a month-to-month tenancy was created when Redd did not vacate the apartment after her lease expired at the end of November 2024 and Prairie Park accepted her payment of December rent. *See* WIS. STAT. § 704.25(2)(b)-(c). Redd's allegation that Prairie Park made intentional misstatements of the amount of unpaid rent could be significant if the termination notice had been based on Redd's alleged nonpayment of rent. *See* WIS. STAT. § 704.17(4m)(a) (a notice terminating a tenancy for failure to pay rent that misstates the amount due is valid unless "[t]he landlord's statement of the amount due is intentionally incorrect"). However, month-to-month tenancies can generally be terminated by either party at will, provided that the party gives timely notice. WIS. STAT. § 704.19(2)-(3). Here, the court found that the month-to-month tenancy was terminated based on a 28-day notice that satisfied the requirements of § 704.19(2), and not based on Redd's alleged failure to pay rent.

¶14 The Wisconsin Statutes impose limited requirements for notices that terminate month-to-month tenancies. The primary statutory requirement is at least 28 days' notice, and that requirement was satisfied by the notice here. WIS. STAT. § 704.19(2)(a)-(3). Even if Prairie Park also included incorrect information about the amount of past-due rent that Redd owed, "the truthfulness or reasonableness of the cause for termination is not … of material significance when a landlord uses a

28[-]day notice of termination procedure." ***Scalzo v. Anderson***, 87 Wis. 2d 834, 846, 275 N.W.2d 894 (1979). Accordingly, even if true, Redd's argument that the notice misstated the amount Redd owed does not affect the validity of the notice.

¶15 Redd next argues that, even if Wisconsin law allowed Prairie Park to evict her without cause pursuant to a 28-day notice, the eviction is contrary to federal law that applies to properties that receive low-income housing tax credits. More specifically, Redd contends that Prairie Park violated several federal requirements that are found in 26 U.S.C. § 42. Most of Redd's arguments about § 42 are immaterial to the eviction action;[2] the one arguably relevant argument is based on § 42(h)(6)(E)(ii)(I). More specifically, Redd argues that pursuant to § 42(h)(6)(E)(ii)(I), Prairie Park was required to show "good cause" to evict her and did not do so.[3] For purposes of this appeal, I assume without deciding that § 42(h)(6)(E)(ii)(I) applies here and that, if Prairie Park lacked good cause as that term is used in the federal statute, its lack of good cause would be a defense to this eviction proceeding.

---

[2] Redd argues that Prairie Park flouted rent restrictions, income eligibility rules, and nondiscriminatory tenant selection and retention standards. But even if true, Redd does not explain how any of these allegations would affect the validity of the eviction.

[3] The provision in the federal statutes that Redd relies on provides, in part, as follows:

> The termination of an extended use period under clause (i) shall not be construed to permit before the close of the 3-year period following such termination--
>
> … the eviction or termination of tenancy (other than for good cause) of any existing tenant of any low-income unit[.]

26 U.S.C. § 42(h)(6)(E)(ii)(I). This provision is in a subpart of the statute that addresses whether buildings are eligible for tax credits, and that appears to condition eligibility on a "minimum long-term commitment to low-income housing." *See* § 42(h)(6).

¶16     Neither 26 U.S.C. § 42 nor federal regulations define the term "good cause," and the parties point to no Wisconsin case addressing it.[4]  However, it is not necessary to define the term here because Redd does not dispute that a tenant's failure to pay rent as it came due would constitute "good cause" under the regulations.

¶17     As mentioned, Prairie Park's termination notice cited Redd's "continued failure to pay rent in a timely manner," and it identified an unpaid past-due balance.  At trial, Prairie Park introduced several default notices that it issued to Redd between July and December of 2024.  Three cited unpaid rent, and a fourth stated that Redd had engaged in "prohibited conduct," apparently referring to an ongoing conflict between Redd and her downstairs neighbor.  Although Redd did not include the trial transcript in the appellate record, the existing record suggests that the circuit court addressed and rejected Redd's argument about good cause during the trial.  The court stated as much during the motion hearing, explaining that "the evidence at the [trial] did provide a factual basis that satisfied me that this landlord complied with all applicable state, federal, and local rules."

¶18     Although Redd contends that Prairie Park's allegations were false and its ledgers fabricated, she offers no evidentiary support for these assertions. Because the record on appeal does not include a trial transcript, I assume that the missing material supports the circuit court's ruling.  *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 889 N.W.2d 381 ("It is the appellant's

---

[4] Some courts in other states have declined to establish a bright-line definition of "good cause," instead proceeding case-by-case.  *See, e.g.*, *Cimarron Vill. v. Washington*, 659 N.W.2d 811, 816-17 (Minn. Ct. App. 2003) (noting that articulating a comprehensive definition would "supply that which the drafters have declined to supply").

responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, [the appellate court] must assume that the missing material supports the [circuit] court's ruling.'" (citation omitted)).

¶19     Redd next argues that Prairie Park effectively rescinded its right to terminate the tenancy at the end of January 2025 when it accepted her January rent payment. This argument presents a question of statutory interpretation, which "begins with the language of the statute." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning," *id.*, and should be interpreted in context and "reasonably, to avoid absurd or unreasonable results," *id.*, ¶46.

¶20     Redd's argument is based on a narrow reading of language in WIS. STAT. § 704.25(2)(c), but the prior paragraph, par. (2)(b), provides important context for interpreting par. (2)(c). Together, the two subparts provide as follows:

> (b) *All other leases*. If premises are leased for less than a year for any use, or if leased for any period primarily for private residential purposes, and the tenant holds over after expiration of the lease, the landlord may elect to hold the tenant on a month-to-month basis ….

> (c) *When election takes place*. Acceptance of rent for any period after expiration of a lease or other conduct manifesting the landlord's intent to allow the tenant to remain in possession after the expiration date constitutes an election by the landlord under this section unless the landlord has already commenced proceedings to remove the tenant.

¶21     As applied here, Redd's lease expired at the end of November 2024. Prairie Park then elected to hold Redd to a month-to-month tenancy when it

accepted her December rent payment on December 5. That month-to-month tenancy was ongoing and would be in effect until it was terminated by either party. Under the facts here, Prairie Park gave timely notice that it would be terminating the tenancy at the end of January 2025.

¶22 Redd argues in favor of a different application of this statutory language. She proposes that Prairie Park's acceptance of the January 2025 rent payment—after it had given Redd notice of termination of the tenancy but before it initiated circuit court proceedings to evict her—constituted an election to commence a new month-to-month tenancy that would begin in February. In effect, the argument appears to be that the "election" contemplated by WIS. STAT. § 704.25(2)(c) is an ongoing process that takes place each month, when a landlord accepts a rent payment after the "expiration of" the month-to-month rental period covering the preceding month. And the implication of Redd's argument is that if Prairie Park wanted to terminate the tenancy as of the end of January, it had to file the eviction case before it accepted January rent, or else it would have no choice but to forego its entitlement to January rent.

¶23 Redd's argument misreads the statutory text. When the text is read in context with the surrounding statutes, a landlord's election to hold the tenant to a month-to-month tenancy happens just once, "after expiration of a lease," and results in a month-to-month arrangement that is ongoing until it is terminated. There is no statutory text that suggests that election is a continuing process that begins anew each month, as Redd suggests.

¶24 The interpretation that Redd offers—that a landlord who accepts rent in a given month is committing to extend the tenancy through the end of the following month—would lead to unreasonable results. *See* ***Kalal***, 271 Wis. 2d

633, ¶46. If Redd's view were correct, a landlord who had served a notice to terminate the tenancy could not accept a rent payment for the final month of the tenancy, even though such payment was undisputedly owed, without establishing a new tenancy. This would undermine the concept of a month-to-month tenancy.[5]

¶25 Finally, Redd argues that the eviction is "void" due to the manner in which the writ of restitution was executed. Although Redd asserts that the writ was itself defective, she does not develop an argument to that end. She instead appears to be arguing that the deputy sheriff who executed the writ violated provisions in WIS. STAT. § 799.45 and that Prairie Park violated this court's temporary stay of the writ when it removed her property after the writ was executed.

¶26 A writ of restitution is an order to the sheriff requiring the sheriff to remove the tenant and the tenant's property from a rented premises. WIS. STAT. § 799.45(2). Upon delivery of a writ to the sheriff, the sheriff must execute it

---

[5] On appeal, Redd also argues that Prairie Park rescinded its right to terminate the tenancy by accepting rent subsidy payments from the CDA that covered the months after Prairie Park terminated the lease. This argument, which was not well developed during the circuit court proceedings, fails on appeal for at least two reasons. First, the court was not required to accept its factual premise. During the motion hearing, Redd sought to introduce an email from a CDA client services manager that supported her assertion that CDA disbursed certain rent subsidies that covered a period ending on April 13, 2025 (that is, the date that the court ordered Redd to vacate the premises). However, Prairie Park's representative testified that it had "not received … nor … accepted any further funds from [the CDA]" after it terminated the tenancy in January. Second, the case Redd cites does not cover the situation here. Redd cites *Pacheco v. Hoops Management LLC*, No. 2024AP880, unpublished slip op. (WI App Mar. 25, 2025), and I consider *Pacheco* for its persuasive value under WIS. STAT. RULE 809.23(3)(b). As Redd acknowledges, *Pacheco* held that a landlord may not accept payments of prospective rent that are made after the landlord has obtained a writ of restitution. *Id.*, ¶26. Even if persuasive, that holding does not help Redd because the alleged CDA payments here were for rent that was for a period of time prior to the issuance of the writ, and the payments were allegedly disbursed before the writ issued.

within ten days. § 799.45(5)(a). As a "complete alternative" to the removal of the tenant's property by the sheriff, the landlord may notify the sheriff that the landlord will instead remove the property. § 799.45(3m). When a tenant is evicted and leaves personal property behind, the landlord may (subject to two exceptions that are inapplicable here) consider the property abandoned and dispose of it as the landlord chooses. WIS. STAT. § 704.05(5)(a)1.

¶27    Redd's argument about the writ of restitution and the stay fails for at least two reasons.

¶28    First, Redd does not cite any authority to support the proposition that the proper remedy for a violation of the writ or the stay would be to void a properly entered judgment of eviction. This is an especially glaring omission with respect to the deputy sheriff's alleged violations. Voiding a judgment of eviction based on postjudgment violations by the sheriff's office would be an unusual remedy, given that the sheriff's office is not a party to an eviction case.

¶29    Second, the record here does not show any violation of WIS. STAT. § 799.45, nor of this court's stay. Redd acknowledges that the writ was executed by a deputy sheriff the day before this court issued the stay. The affidavit signed by the deputy sheriff certifies that Redd was removed on May 7, 2025, and that Prairie Park took responsibility for property disposal under § 799.45(3m). Therefore, by the time our stay issued, there was nothing to stay—our order purported to stay the writ, but the writ had already been executed. Therefore, even if Prairie Park removed property between May 8 and May 13 (an allegation Redd makes but fails to support), Redd does not explain how doing so would have violated the stay issued by this court.

**CONCLUSION**

¶30     For the above reasons, I conclude that the circuit court did not err when it granted the eviction and denied Redd's motion for a hearing based on new evidence.  Therefore, I affirm the judgment of eviction.

        *By the Court.*—Judgment affirmed.

        This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)4.